IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CHARLES DIXON, | ) | |
|     Plaintiff and | ) | |
|     Counterclaim Defendant, | ) | |
| vs. | ) | Case No. 09-0812-CV-W-ODS |
| MARK SOMMERS, | ) | |
|     Defendant, | ) | |
|     Counterclaim Plaintiff, | ) | |
|     and Third Party Plaintiff, | ) | |
| JEANNINE SOMMERS, | ) | |
|     Defendant, and | ) | |
| MARK SOMMERS TRUST DATED AUGUST 14, 2006, | ) | |
|     Defendant and | ) | |
|     Counterclaim Plaintiff, | ) | |
| vs. | ) | |
| SOMMERS MILLWORK, LLC, a Missouri Limited Liability Company, | ) | |
|     Third-Party Defendant. | ) | |

## ORDER AND OPINION GRANTING MOTIONS TO DISMISS AND GRANTING LEAVE TO AMEND PLEADINGS

Pending are Charles Dixon's and Sommers Millwork, LLC's motions to dismiss claims for punitive damages (Docs. 16 & 18). The motions are granted; however, Mark Sommers (Sommers) and Mark Sommers Trust Dated August 14, 2006 (Trust) will be granted leave to amend their pleadings.

## I. BACKGROUND

On August 21, 2007, Dixon purchased all the membership interests in Sommers Millwork, LLC (Company) from Trust for $2,450,000.00 (Purchase Agreement). In the Purchase Agreement, Trust and the prior President of Company, Sommers, represented that the reported financial condition of Company was accurate. Sommers and Trust also represented that no indications had been received from Company's largest customers that they would decrease their future business with Company. In addition, the Purchase Agreement prohibited Sommers from discouraging third parties from dealing with Company and contained restrictive covenants limiting Sommers' ability to solicit Company's customers and manufacture or sell wood products for a number of years.

The same day the Purchase Agreement was executed, Dixon purchased from Sommers and his wife, Jeanine Sommers (Wife), all the real estate, improvements, and access easements associated with Company's business plant (Real Estate Agreement). Dixon and Company also contracted with Sommers for consulting services (Consulting Agreement). The Consulting Agreement required Sommers to provide business consulting services to Company for monthly commission payments totaling at least $2,000,000.00. A noncompetition clause was included in the Consulting Agreement incorporating the restrictions placed on Sommers in the Purchase Agreement.

Dixon alleges several problems with the formation and execution of the Consulting Agreement and Purchase Agreement. According to Dixon, Trust and Sommers knew at the time the Purchase Agreement was formed that one of Company's major customers was likely to stop or materially decrease purchases of materials and/or products from Company. Dixon further alleges that Trust and Sommers misrepresented Company's financial condition and failed to notify Dixon of material financial, customer, and operating information. According to Dixon, Sommers never intended to perform under the Purchase Agreement and Consulting Agreement and failed to perform under these contracts by discouraging a customer from maintaining its relationship with Company, violating the noncompete covenants, and by making various representations

2

regarding Company which Sommers knew were false.  Dixon filed a Complaint against Sommers, Wife, and Trust, asserting claims under Missouri law for breach of contract and fraud.  Dixon also is seeking rescission of the Purchase Agreement, Consulting Agreement, and Real Estate Agreement (Doc. 1).

Sommers counterclaimed against Dixon and filed a third-party claim against Company, both of which were alleged to have breached the Consulting Agreement by failing to make monthly commission payments to Sommers (Doc 8).  Sommers' requested relief included exemplary[1] damages, alleging that "[t]he breach by Dixon and Company is and was deliberate, rising to the level of an independent, willful tort such that the conduct of Dixon and Company is outrageous and in complete disregard of the rights of Sommers."  Trust also counterclaimed against Dixon, claiming Dixon breached an "Earnout Agreement" with Trust by failing to make monthly payments totaling between $2,000,000 and $3,000,000 in partial satisfaction for purchase of the membership interests in Company (Doc. 9).  Like Sommers, Trust sought exemplary damages, alleging Dixon breached the Earnout Agreement in an "outrageous" manner "rising to the level of an independent, willful tort."

Dixon and Company subsequently filed the instant motions to dismiss, arguing that Sommers and Trust failed to allege facts supporting their claims for punitive damages.  In response, Sommers and Trust dispute the merits of Dixon's and Company's motions and, in the alternative, request leave to amend their pleadings so that they can allege sufficient facts supporting their punitive damages claims.

## II.  DISCUSSION

The liberal pleading standard created by the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P.

---

[1] Missouri courts equate exemplary damages with punitive damages.  *Uhle v. Sachs Elec.*, 831 S.W.2d 774, 777 n.1 (Mo. Ct. App. 1992).

8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

"Although Missouri law generally does not permit the recovery of punitive damages for a breach of contract, punitive damages may be permissible if the breach also amounts to an independent tort." *BJC Health System v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citation omitted). The independent tort is "separate from the contractual claim" and must be "accompanied by allegations of legal malice." *Wash Solutions, Inc. v. PDQ Mfg., Inc.*, 395 F.3d 888, 896 n. 3 (8th Cir. 2005) (citation omitted). Here, Sommers and Trust allege punitive damages are warranted because Dixon's and Company's conduct "[rose] to the level of an independent, willful tort." However, this is a mere legal conclusion that need not be accepted as true. *See McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009). As for Sommers' and Trust's other pleadings, they allege facts showing breach of contract, but they do not allege any facts tending to show conduct amounting to an independent tort. Without an independent tort, Sommers and Trust cannot recover punitive damages, and Dixon and Company are entitled to dismissal of the punitive damages claims.

Sommers and Trust contend they should be permitted to amend their pleadings. A district court should freely give leave to a party to amend its pleadings when justice so requires, FRCP 15(a). In support of their request to amend, Sommers and Trust assert that

> after Dixon first nearly drove the Company into the ground, Dixon, individually and as President of the Company, then, with an intent to defraud Sommers and the Trust, declared them to be in breach of their agreements in order to avoid paying monies they owed under the agreements. In other words, Dixon knowingly fabricated a basis to excuse his and the Company's own performance under the contracts. Dixon's fraudulent and intentional conduct rises to the level of an independent tort

> and warrants imposition of punitive damages under the "independent tort" exception to the general rule against punitive damages in breach of contract actions.

Notably, Sommers and Trust still make the conclusory and unrevealing allegation that Dixon's and Company's conduct "rises to the level of an independent tort." The only specific cause of action alluded to is fraud, but Sommers and Trust fail to identify any misrepresentation they relied upon that would support this cause of action and which would be necessary to comply with the heightened pleading requirements imposed by FRCP 9(b).

The Court will grant Sommers and Trust leave to amend their pleadings to properly allege an independent tort supporting their claims for punitive damages. However, Sommers' and Trust's amendments must *separately and specifically identify* the independent tort. Merely pleading the information quoted above will be insufficient. If the independent tort is fraud, this cause of action must be pled "with particularity." FRCP 9(b). The Court reminds Sommers and Trust that its allegations of tortious conduct are permissible only if there is reasonable cause to believe that such factual contentions have or will like have evidentiary support. *See* FRCP 11(b)(3).

### III.  CONCLUSION

Dixon's and Company's motions to dismiss the punitive damages claims are granted. Sommers and Trust are granted leave to replead their punitive damages claims with proper allegations of an independent tort. The amended pleadings shall be filed on or before January 22, 2010.
IT IS SO ORDERED.

                                                  /s/ Ortrie D. Smith
                                                  ORTRIE D. SMITH, JUDGE
DATE:  January 8, 2010                  UNITED STATES DISTRICT COURT